**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BENJAMIN SMITH,

                                        Plaintiff,

             v.                                                    No. 09-CV-729
                                                                   (TJM/DRH)

UNITED STATES OF AMERICA and MR.
FELNER, Unit Manager, FCI Ray Brook,

                                        Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

BENJAMIN SMITH
Plaintiff Pro Se
989 South 5th Street
Philadelphia, Pennsylvania 19147

HON. RICHARD S. HARTUNIAN                  CHARLES E. ROBERTS, ESQ.
United States Attorney for the Northern    Assistant United States Attorney
   District of New York
Attorney for Defendants
Post Office Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

       Plaintiff pro se Benjamin Smith ("Smith"), formerly an inmate in the custody of the

United States Bureau of Prisons ("BOP") at the Ray Brook Federal Correctional Institution

("Ray Brook"), brings this action against defendants United States of America and Mr.

Fellner, a Unit Manager at Ray Brook, alleging that (1) he was injured when a chair

collapsed under him through the negligence of the United States under the Federal Tort

_____

       [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Claims Act, 28 U.S.C. §§ 2571-80 (FTCA); (2) Felner, assigned as the hearing officer at a disciplinary hearing, was biased and found Smith guilty of the charge in violation of Smith's right to due process of law under the Fifth Amendment and <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971); and (3) Smith was confined in  a cell for twenty days in unsanitary conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment and <u>Bivens</u>.  Compl. (Dkt. No. 1).[2]  Presently pending are (1) Smith's motion to compel discovery pursuant to Fed. R. Civ. P. 37 (Dkt. No. 61), (2) defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 62), (3) Smith's cross-motion for summary judgment pursuant to Rule 56 (Dkt. No. 69, and (4) Smith's motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15 (Dkt. No. 74).  For the reasons which follow, (1) Smith's motion to compel is denied, it is recommended that (2) defendants' motion for summary judgment be granted in part and denied in part and that (3) Smith's cross-motion be denied, and (4) Smith's motion for leave to file an amended complaint is denied.

## I. Background

Smith's remaining claims[3] concern three separate incidents which occurred while he was incarcerated at Ray Brook.

---

[2]Other claims and defendants were previously dismissed on defendants' motion to dismiss.  <u>See</u> Dkt. Nos. 40, 41, 50.

[3]Various other claims and defendants were previously dismissed.  <u>See</u> Dkt. Nos. 40, 41, 50.

**A. Chair**

On June 12, 2007, Smith was sitting in an office chair while working in the "factory" at

Ray Brook. Compl.[4] at 4. As Smith leaned back, the chair broke, and he fell backward onto

a broken metal support bar. Id.  This resulted in an injury to Smith's lower back. Id.

Smith maintains that the chair, which was manufactured by UNICOR[5] at the Florence

Federal Correctional Facility in Florence, Colorado, was "defective." Id. Smith asserts

that prison officials knew that this particular chair was defective but failed to take

steps to protect him from this unsafe condition. Id. Smith filed a claim with BOP seeking

monetary damages for the injuries he received due to the allegedly defective chair, but his

claim was rejected and Smith was advised to seek a remedy through the Inmate Accident

Compensation System instead.[6]  Smith sought compensation pursuant to the Inmate

Accident Compensation Act (IACA), but he was denied because his injuries were deemed

---

[4]Under Fed. R. Civ. P. 56(e), a party must offer evidence in sworn affidavits.  A verified complaint meets this requirement.  See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  The complaint here was verified and will, therefore, be considered on this motion.  See Compl. at 4.

[5]UNICOR, also known as Federal Prison Industries, is a government-owned corporation that employs and trains federal prison inmates, and produces various goods including office furniture. See generally UNICOR ONLINE, http://www.unicor.gov (last visited Jan. 21, 2011).

[6]The Inmate Accident Compensation System provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. This system affords the exclusive remedy for federal inmates who sustain work-related injuries while incarcerated. United States v. Demko, 385 U.S. 149, 152 (1966). Moreover, § 4126 provides "the exclusive remedy when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." Moore v. United States, No. 85-CV-1151, 1988 WL 70025,at *3-4 (N.D.N.Y June 30, 1988) (Munson, J.).

"non-work-related." Smith Decl. (Dkt. No. 27-1), Ex. E, at 41.

## B. Biased Hearing Officer

On November 2, 2006, a disciplinary charge was issued charging Smith with threatening his Ray Brook case manager with bodily harm and being insolent towards a staff member. Compl. at 8.  Smith was confined for twenty days in the Special Housing Unit ("SHU")[7] before the charge was resolved.  Id. at 3. A disciplinary hearing was held at which Felner presided as the hearing officer. Id. at 3; Fellner Decl. (Dkt. No. 62-2) at ¶ 3 (stating that Smith was confined in the SHU November 2-22, 2006).  Smith maintains that Felner was biased against him and that during the hearing Felner stated that the assault charge would be dismissed "because he knew that [the case manager] was lying," but that he had to find Smith "guilty of something." Id.  At the conclusion of the hearing, Felner found that the charged conduct did not amount to a "High Severity" offense but did constitute the "Moderate Severity" offense of "Insolence." Felner Decl. (Dkt. No. 23-4) ¶ 7.  Felner then "informally resolved" the matter through verbal counseling and "extra duty," and

---

[7]Inmates may be confined to SHU for discipline, protection, or other reasons.

> The SHU at FCI Ray Brook is comprised of a series of first and second floor cells, visible from a central hub area. Each cell includes a door with a small plexiglass window and an additional port, described as a "wick", which can be unlocked and opened for use in applying and removing hand restraints from inmates. While in SHU confinement, BOP inmates are typically confined to their cells twenty-three hours a day, and are afforded daily recreation during weekdays for a period of one hour.

Bacon v. United States, No. 9:01-CV-1688 (DEP), 2007 WL 4224639, at *1 (N.D.N.Y. Nov. 27, 2007).

recommended that Smith be released from the SHU. Id.

### C. Unsanitary Cell Conditions

While Smith was in the SHU, he shared the small cell with three other inmates. Compl. at 3.  This cell had one toilet that was flushed by corrections officers from outside the cell. Id.  Smith alleges, however, the corrections officers, who are not specifically named in the complaint, refused to flush the toilet or provide the inmates with toilet paper for two weeks. Id.  Smith and the other inmates were forced to use pieces of clothing and napkins as toilet paper.  Id.  The toilet eventually overflowed, causing human waste to pour onto the floor of the cell.  Id.   Smith, who slept on a plastic mattress on the floor near the overflowing toilet, became nauseous and lightheaded from the odor.  Id.  Smith claims that the prison staff, including Felner, knew of but ignored these conditions.  Id.

### II. Motion to Compel

During discovery, Smith requested that defendants produce (1) any investigative reports regarding his case manager, Susan Kieffer, and the disciplinary charge she issued to Smith on November 2, 2006, and (2) the parts from the broken chair in the June 12, 2007 accident.  Dkt. No. 61 at 1.  As to the reports, defendants object to production on the ground that while Kieffer was named as a defendant in the complaint claiming that her November 2, 2006 disciplinary charge was issued in retaliation against Smith for filing grievances, Kieffer is no longer a party to this action, no claims are pending against her, and the reports sought are, therefore, irrelevant.  Dkt. No. 67 at 3; see also Dkt. Nos. 40, 41, 50.  Smith contends

that any such report may lead to evidence of Felner's bias as the hearing officer and, therefore, relevance is demonstrated under the broad standard of Fed. R. Civ. P. 26(b). An investigative report of Kieffer's conduct, however, is too attenuated to the issue of Felner's possible bias to satisfy even the broad standard of relevance under Rule 26(b). Accordingly, Smith's motion as to any Kieffer reports Is denied.

As to the broken chair parts, defendants now respond that "all parts of the broken chair in issue were discarded and are not available for inspection."  Defs. Supplemental Response dated Nov. 28, 2011 (Dkt. No. 67-1 at 15).[8]  Discarding the chair may or may not constitute spoliation.  See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 109 (2d Cir. 2001) (stating elements necessary to demonstrate spoliation); see also Smith Mem. of Law in Support of Cross-Motion (Dkt. No. 69-3) at 2 (arguing spoliation).  The question presented here, however, is an issue of discovery.  Defendants assert that the materials demanded by Smith are no longer in their possession or control.  A party cannot be compelled to produce what it does not possess or control.  Therefore, Smith's motion to compel as to the broken chair parts is also denied.

### III. Motions for Summary Judgment

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the

---

[8]Defendants' previous response to Smith had advised that no records of the chair had been found.  Defs. Mem. of Law (Dkt. No. 67) at 4.

absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Defendants' Motion**

Defendants seek summary judgment as to all claims on the ground that Smith has raised no triable issue of fact as to any claim and the undisputed facts mandate judgment in favor of defendants.

**1. Chair**

Smith asserts a claim under the FTCA concerning the allegedly defective chair. Defendants originally moved to dismiss this claim on the ground that because Smith asserted in his claim that his injury occurred while he was working in the Ray Brook factory, his exclusive remedy was under the IACA.  As discussed infra, The IACA provides the exclusive remedy for a prisoner's work-related injuries. 28 C.F.R. § 301.319; Demko, 385 U.S. at 152–54.  Smith sought recovery under the IACA, but his claim and subsequent appeals were denied by BOP on the ground that because Smith had not been at his assigned work station when the injury occurred, his injury was not work-related and the IACA was inapplicable.  See Dkt. No. 40 at 25-26.  The undersigned recommended that defendants' motion to dismiss the FTCA claim be granted.  Id. at 26-28.  The district court adopted that recommendation, but Smith objected and moved for reconsideration.  Dkt. Nos. 41-43.  Upon reconsideration, the district court denied defendants' motion to dismiss the FTCA claim and that claim remains pending.  Dkt. No. 50.

It is unclear from defendants' motion papers on what basis they seek judgment on the FTCA claim.  At best, it appears that they restate their contention that by making a claim under the IACA and asserting that his injury was work-related, Smith is now precluded from

asserting a parallel claim under the FTCA.  <u>See</u> Defs. Mem. of Law (Dkt. No. 62-6) at 12-14.

Smith makes clear in his response that his claim in this action is solely under the FTCA.

<u>See</u> Pl. Mem. of Law (Dkt. No. 69-1) at 20 ("For the sake of clarity, plaintiff has never raised

an IACA claim in this case . . . .").

 Although BOP denied Smith's IACA claim on the ground that his injury was not work-

related, defendants now appear to seek judgment on the ground that Smith's injury was in

fact work-related, the IACA provides the exclusive remedy for his claim, and defendants

must, therefore, be granted judgment on the FTCA claim.  As defendants note, parties may

assert inconsistent arguments in prosecuting and defending actions and both Smith and

defendants have done so here.  <u>See</u> Fed. R. Civ. P. 8(d)(3); <u>Adler v. Pataki</u>, 185 F.3d 35,

41 (2d Cir. 1999).  Smith asserted in his IACA claim that his injury was work-related and

now in his FTCA claim that it was not.  Defendants denied Smith's IACA claim on the

ground that his injury was not work-related and now assert on this motion that it was.  The

question whether Smith's injury was work-related continues to present a triable issue of fact

given the conflicting prior assertions of both parties on the issue.  Therefore, defendants'

motion on the ground that the IACA provides the exclusive remedy for Smith's claim should

be denied.

 As to the merits of Smith's FTCA claim, the undersigned has previously noted the

elements which Smith must prove to establish that claim and apparent deficiencies in

Smith's proof.  <u>See</u> Dkt. No. 40 at 26-28.  First, defendants make no argument challenging

the sufficiency of Smith's proof on this claim.  Second, since it now appears that defendants

have discarded the broken parts of the chair in question, Smith may be entitled to the

benefits of a spoliation instruction, including the possibility of an adverse inference against

defendants on the elements of Smith's claim which would suffice to establish a prima facie

case of negligence against defendants.  See section II supra; see also Residential Funding

Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106 (2d Cir. 2002) (noting that an adverse

inference instruction Is "usually . . . employed in cases involving spoliation of evidence . . .

.").

Accordingly, defendants' motion as to Smith's FTCA claim should be denied.


### 2. Biased Hearing Officer

Defendants contend that they should be granted judgment on Smith's due process

claim that Felner was biased because (a) Smith's claim is not constitutionally cognizable, (b)

Felner's determination was supported by sufficient evidence, and (c) the evidence of bias is

insufficient to raise a triable issue of fact.  Defs. Mem. of Law at 6-11.


### a. Cognizable Due Process Claim

An inmate asserting a violation of his or her right to due process must establish the

existence of a protected interest in life, liberty, or property.  See Perry v. McDonald, 280

F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must

satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483–84 (1995). This

standard requires a prisoner to establish that the deprivation was atypical and significant in

relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999);

Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). The fact that an inmate has been

disciplined with a SHU confinement alone is insufficient to establish an atypical and

significant deprivation.

The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). Where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis v. Barrett, 576 F.3d 129, 133–34 (2d Cir. 2009) (finding questions of fact under Sandin where plaintiff spent sixty days in SHU).  On the other hand, absent extraordinary circumstances, SHU confinement for less than thirty days, as here, is insufficient to establish an atypical and significant hardship under Sandin.  See Palmer v. Richards, 364 F.3d 60, 65–66 (2d Cir. 2004) (noting that "we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short -- less than ... 30 days . . . ."); Phillips v. Roy, No. 9:08-CV-878 (FJS/ATB), 2011 WL 3847265, at *16 (N.D.N.Y. Aug. 28, 2011) (dismissing prisoner's due process claim where punishment did not exceed thirty days in confinement); Rodriguez v. McGinnis, 1 F. Supp. 2d 244, 248 (S.D.N.Y.1998) (holding that " '[t]he decisions of the Second Circuit are unanimous that keeplock ... confinement of 30 days or less in New York prisons is not "atypical or significant hardship" under Sandin' " (quotation and other citations omitted)).

Thus, absent extraordinary circumstances, Smith's confinement in SHU for twenty days was insufficient to raise an issue of fact as to his due process claim of a biased hearing officer and defendants are entitled to judgment on that claim.  However, Smith asserts that the conditions in the SHU cell which he shared with two other inmates were so

atypical and significant in comparison to the cells of inmates in the general population as to satisfy the requirement that he demonstrate the deprivation of a liberty interest.  As noted, Smith asserts that an overflowing toilet in the cell rendered the condition of the cell unsanitary and uninhabitable.  See subsection I(C) supra.  Defendants deny this assertion.  See Felner Decl. at ¶¶ 4-5.  If Smith's assertion is sufficient to create a triable issue of fact, defendants' motion on this ground must be denied.[9]  See, e.g., Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004) (finding that the deprivation of personal belongings, use of mechanical restraints, and discontinuation of communication may give rise to a liberty interest); Welch v. Bartlett, 196 F.3d 389, 393 (2d Cir. 1999) (stating that allegations of "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes" may constitute an atypical and significant hardship); Delaney v. Selsky, 899 F. Supp. 923, 927-28 (N.D.N.Y. 1995) (McAvoy, C.J.) (holding that a question of fact was created under Sandin where inmate was over seven feet tall and the bed in SHU was too short).

Here, however, Smith has failed to raise a triable issue of fact whether any unsanitary conditions existed in his SHU cell.  The only evidence that such conditions existed comes from Smith's own self-serving statements.  See Compl. at 3.  On the other hand, defendants offer overwhelming evidence that no such conditions existed.  Felner asserts that while Smith was held in SHU from November 2 to 22, 2006, he made five routine visits to the cell in his capacity as a Unit Manager and never observed any of the

---

[9]For the same reason, if Smith's assertion here suffices, it defeats defendants' motion as to Smith's Eighth Amendment conditions of confinement claim based on the same assertion.  See subsection III(B)(3) infra.

conditions alleged by Smith.  Felner Decl. at ¶ 4.  Dozens of other staff members visited the SHU in the same time period and none noted any threat to Smith's health or safety.  Id. Smith himself filed approximately 121 administrative grievances on various issues while incarcerated in BOP custody but never filed any grievances regarding the allegedly unsanitary conditions.  Id. at ¶ 5.  Smith's two cell mates in SHU also never filed any grievances or complaints about any unsanitary conditions in the cell while Smith shared the cell.  Id.

Thus, the question is whether Smith's statement about the conditions of his SHU cell alone suffices to create a triable issue of fact.  In Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005), the plaintiff was arrested in the course of a robbery, pleaded guilty to criminal charges, and then brought an action against the arresting officers and their employer alleging that they had used excessive force in effecting his arrest in violation of the Eighth Amendment and 42 U.S.C. § 1983.  The plaintiff asserted that the officers had beaten him after he surrendered and threw him from a third-story window.  The officers denied this and all testified that the plaintiff had attempted to escape by jumping from the window.  The defendants moved for summary judgment, the motion was granted by the district court, and the plaintiff appealed, arguing that a material question of fact existed in the conflicting versions of events between the plaintiff and defendants.  Id. at 551-53.

On appeal, the Second Circuit Court of Appeals noted that generally, conflicting testimony concerning a material issue of fact as existed there presented issues of credibility which could only be resolved by a fact-finder at trial.  Jeffreys, 426 F.3d at 554.  On a motion for summary judgment, however, the party opposing the motion was required to do more than offer opposing conclusory or speculative statements.  Id. (quoting  D'Amico v.

13

City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998) (holding that a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful."). The court then upheld the district court's determinations that (1) nothing in the record supported the plaintiff's allegations "other than plaintiff's own contradictory and incomplete testimony," and (2) "no reasonable person could believe Jeffreys'[s] testimony," Id. at 555 (internal quotation marks omitted). The grant of summary judgment to the defendants was affirmed. Id.

Other courts in this circuit have followed the Jeffreys analysis in granting summary judgment to defendants where the only questions of fact arose from self-serving and otherwise unsupported testimony of the plaintiff. See, e.g., Caldwell v. Getmann, No. 9:09-CV-580 (DNH/DEP), 2012 WL 1119869, at *4-7 (N.D.N.Y. Mar. 2, 2012) (Peebles, M.J.) (applying Jeffreys in a prisoner excessive force case); McMahon v. Fura, No. 5:10-CV-1063 (GHL), 2011 WL 6739517, at *10 (N.D.N.Y. Dec. 23, 2011) (Lowe, M.J.) ("This evidence is insufficient to raise a triable issue of fact that Defendant Patti used any force against Plaintiff because it is entirely dependent on Plaintiff's own extremely incomplete testimony."); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 468–71 (S.D.N.Y. 1998) (Sotomayor, J.) (holding that "when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations ... and dismiss the claim.") (internal quotation marks omitted) (cited with approval in Jeffreys, 426 F.3d at 555)).

For the Jeffreys exception to apply, defendants must demonstrate that "1) the plaintiff must rely almost exclusively on his own testimony; 2) the plaintiff's testimony must be contradictory or incomplete; and 3) the plaintiff's testimony must be contradicted by

14

evidence produced by the defense." Caldwell, 2012 WL 1119869, at *6 (internal quotation marks and citation omitted).  Here, as to the first requirement, Smith relies exclusively on his own testimony to establish the conditions in his cell.  As to the second requirement, Smith testified that the conditions in his SHU cell included human waste overflowing from the toilet to the floor where Smith was required to sleep on a mattress.  See Compl. at 3.  However, although Smith had filed approximately 121 grievances regarding various matters during his BOP incarceration, he never complained to anyone in authority about these alleged conditions until this action was commenced.  See Felner Decl. at ¶ 5.  His testimony regarding the conditions is, therefore, contradicted by his conduct.  As to the third requirement, defendants have offered evidence that Felner visited Smith's SHU cell on at least five occasions during the November 2-22, 2006 time period and that he never observed the conditions alleged by Smith.  Id. at ¶ 4.  Furthermore, "dozens" of other BOP employees observed Smith's SHU cell in this period and none ever reported observing the conditions now alleged by Smith.  Id.  Finally, no complaints or grievances concerning the conditions alleged by Smith were ever made by the other two inmates confined to the same cell in this period.  Id.

On this record, then, even when Smith's evidence is viewed in the light most favorable to him and drawing all reasonable inferences in his favor, no reasonable fact-finder could conclude that Smith's allegations regarding the conditions of his SHU cell were credible.  Accordingly, the Jeffreys exception applies, no triable issue of fact is presented regarding whether the conditions in Smith's SHU cell were atypical or significant, and defendants' motion on this ground should be granted.

15

**b. Merits**

As to the merits of Smith's claim that Felner was biased, an inmate enjoys the right to an impartial hearing officer in a disciplinary proceeding.  See Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004); Patterson v. Coughlin, 905 F.2d 564, 569–70 (2d Cir. 1990). threatening his Ray Brook case manager with bodily harm and being insolent towards a staff member.  Compl. at 8.  As evidence of Felner's bias, Smith proffers that Felner stated at the hearing that the assault charge would be dismissed "because he knew that [the case manager] was lying," but that he had to find Smith "guilty of something."  Compl. at 3.  At the conclusion of the hearing, Felner found that the charged conduct did not amount to a "High Severity" offense but did constitute the "Moderate Severity" offense of "Insolence." Felner Decl. (Dkt. No. 23-4) ¶ 7.  Felner then "informally resolved" the matter through verbal counseling and "extra duty," and recommended that Smith be released from the SHU. Id.  Defendants contend only that Smith's claim presents no triable issue of fact because Felner's findings were supported by "some evidence."  Defs. Mem. of Law (Dkt.No. 62-6) at 10-11.[10]

The existence of some evidence to support a prison disciplinary hearing determination may suffice to support a prison official's motion for summary judgment on the ground of qualified immunity where the prisoner asserts that there existed no reliable evidence to support a finding, see Sira, 380 F.3d at 60; Luna v. Pico, 356 F.3d 481, 486-87 (2d Cir. 2004), or where the prisoner claims that he or she was found guilty of a disciplinary

---

[10]No record of the hearing has been filed as would permit a determination from the record of that hearing whether Felner demonstrated bias.  See, e.g., Mims v Ufland, No. 07 Civ.1926(DLC), 2008 WL 2986497, at *6 (S.D.N.Y., Aug. 1, 2008) (holding that after a review of the transcript of the disciplinary hearing, no evidence existed to support a claim of bias).

charge on the basis of insufficient evidence.  See Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001) ("where the prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty on the basis of insufficient evidence, the claim must be rejected if there was at least 'some evidence' to support the decision.").

The existence of "some evidence" without more, however, does not serve to defeat a claim that a hearing officer was biased as defendants contend here.  First, no cases have been found in this circuit, and defendants have cited none, in which a claim of a biased hearing officer was rejected because there existed "some evidence" to support the determination.  Second, the existence of "some evidence" in the record does not serve to obviate the harm to a prisoner's due process rights that can result from a biased hearing officer presiding at a hearing.  For example, while "some evidence" may exist in the record, an unbiased hearing officer might be inclined to give such evidence little weight or to reject in whole as incredible or to give countervailing evidence greater weight. Furthermore, an unbiased hearing officer might arrive at a different determination of the appropriate sanction than might a biased one.  Thus, contrary to defendants' contention, the mere existence of "some evidence" in the record to support a disciplinary determination does not resolve a prisoner's claim that he was denied due process by the presence of a biased hearing officer.

Accordingly, defendants' motion on this ground should be denied.

### 3. Unsanitary Cell Conditions

Defendants contend that Smith has failed to raise a triable issue of fact as to his claim that the conditions in his SHU cell November 2-22, 2006 were unsanitary in violation

of his Eight Amendment right to be free from cruel and unusual punishment.  As discussed supra in subsection III(B)(2)(a), the Jeffreys exception applies to this claim and applying that exception for the reasons discussed supra, it is recommended that defendants' motion as to this claim be granted.

## C. Smith's Cross-Motion

Smith cross-moves for summary judgment on his claims.  Dkt. No. 69.  On this cross-motion, as opposed to defendants' motion for summary judgment, the evidence must be viewed in the light most favorable to defendants as the non-moving parties on this motion. See subsection III(A) supra.  So viewed, the evidence in support of Smith's FTCA claim presents triable issues of fact as to whether a defective condition existed and whether defendants were on notice of that condition.  Accordingly, Smith's cross-motion as to this claim should be denied.  As to Smith's other two claims, for the reasons discussed supra, defendants should be granted judgment as to both such claims.  For the same reasons, Smith's cross-motion as to both of those claims should be denied.

## IV. Smith's Motion to Amend

Finally, Smith moves for leave to file an amended complaint.  Dkt. No. 74. Smith seeks to add additional factual allegations concerning the FTCA claim regarding defendants' awareness of defects in the chair prior to the incident on June 12, 2007 and clarifying that Smith alleges an exacerbation of a pre-existing back injury rather than an

original injury.  Proposed Am. Com pl. (Dkt. No. 77-1).[11]  Defendants oppose Smith's motion

on various grounds.  Dkt. Nos. 75, 88.

Rule 15(a) provides that a court should grant leave to amend "freely . . . when justice

so requires." When exercising its discretion, a court must examine whether there has been

undue delay, bad faith, or dilatory motive on the part of the moving party. Evans v. Syracuse

City Sch. District, 704 F.2d 44, 46 (2d Cir.983) ( citing Foman v. Davis, 371 U.S. 178, 182

(1962)).  The court must also examine whether there will be prejudice to the opposing party.

See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)

(permitting proposed amendment would be especially prejudicial once discovery has been

completed and a summary judgment motion filed). Finally, where it appears that granting

leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of

discretion to deny leave to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d

Cir. 1993) (citations omitted).

Here, defendants contend that Smith unduly delayed filing this motion and that the

proposed amended complaint would necessitate additional discovery by defendants and is,

therefore, prejudicial.  As to delay, defendants correctly note that Smith has been on notice

since February 3, 2011 when the report-recommendation on defendants' motion to dismiss

was filed that his complaint failed to allege any facts demonstrating that defendants had

---

[11]Smith attached a first proposed amended complaint to his original motion.  Dkt.
No. 74-1).  In their opposition, defendants pointed out various defects in the form of the
first proposed amended complaint, such as a failure to highlight changes, combining
multiple claims into one,, the failure to number paragraphs, and the like.  Dkt. No. 75.
Smith then filed reply papers attaching a second proposed amended complaint correcting
various defects.  Dkt. No. 77-1.  It appears clear that Smith intended to substitute the
second proposed amended complaint for the first and, therefore, only the second
proposed amended complaint will be considered.

prior notice of any defects in the chair.  <u>See</u> Dkt. No. 40 at 27-28 ("Smith fails to allege or

explain how defendants had actual or constructive notice of such a condition.")  Smith did

not file the present motion until eleven months later on January 9, 2012.  Dkt. No. 74.  In the

meantime, discovery had been completed and the parties had filed motions for summary

judgment.  <u>See</u> Dkt. Nos. 45 (order establishing a discovery deadline of July 15, 2011), 62

(defendants' motion for summary judgment filed October 13, 2011), 69 (Smith's cross-

motion for summary judgment filed December 5, 2011).

      First, on this record, Smith's motion is untimely.  It comes almost one year after

Smith was explicitly advised of the absence of allegations of notice of the defect to

defendants, after discovery had been completed for over five months, and after motions for

summary judgment had been filed.  <u>See</u>  <u>Ansam Associates Inc.</u>, 760 F.2d at 446.  The only

plausible excuse offered by Smith for the delay is his pro se status.  This is unavailing for

two reasons.  First, Smith was explicitly advised of the deficiency in the report-

recommendation almost one year ago and cannot, therefore, claim that he was unaware of

the deficiency he seeks to cure.  Second, notwithstanding the absence of allegations of

notice, Smith's FTCA claim has already survived a challenge to its pleading sufficiency and,

if the recommendation herein is adopted, to the sufficiency of his proof on that claim.  <u>See</u>

Dkt. No. 50 at 3 (granting Smith's motion for reconsideration and denying defendants'

motion to dismiss the FTCA claim); subsection III(B)(1) <u>supra</u> (recommending that

defendants' motion for summary judgment on the FTCA claim be denied where, viewing the

evidence in the light most favorable to Smith, he may be entitled to adverse inferences

against defendants, including on the issue of notice, by virtue of defendants' alleged

spoliation of the chair in question).  Thus, it appears that Smith's FTCA claim will proceed to

trial at which he may offer whatever evidence he possesses concerning the two matters for which he seeks leave to amend his complaint – notice to defendants of alleged defects in the chair and the nature of the injury he suffered in the incident.

Defendants also contend that they would be prejudiced by the delay in Smith making this motion.  Defendants appear to have demonstrated sufficient prejudice from the delay in bringing this motion in that three years after this action was commenced and almost one year after discovery was concluded, they would either be unable to conduct discovery on the new allegations or would need to extend the litigation of this action significantly to conduct discovery on those allegations and, possibly, to file additional motions on the allegations.

Accordingly, Smith's motion for leave to file an amended complaint is denied.


**V. Conclusion**

For the reasons stated above, it is hereby

**ORDERED** that Smith's motions for:

1. An order compelling defendants to produce certain items of discovery (Dkt. No. 61) is **DENIED**; and

2. Leave to file an amended complaint (Dkt. No. 74) is **DENIED**; and

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (Dkt. No. 62) be

A. **DENIED** as to Smith's FTCA claim; and

B. **GRANTED** as to Smith's claims for violations of his rights to due

21

process of law under the Fourteenth Amendment regarding a biased hearing officer  and of his Eighth Amendment right to be free from cruel and unusual punishment regarding the unsanitary conditions in his SHU cell and that judgment be granted to defendant Felner on all remaining claims against him; and

2. Smith's cross-motion for summary judgment (Dkt. No. 69) be **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.D.N.Y.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATED:  July 5, 2012
        Albany, New York

David R. Homer
U.S. Magistrate Judge
 United States Magistrate Judge